**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MELISSA W.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:21-cv-00487

Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Melissa W. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Commissioner disputes. Upon careful review, the undersigned finds that the Commissioner's finding of non-disability will be AFFIRMED because it is supported by substantial evidence in the record as a whole.[2]

**I. Summary of Administrative Record**

On September 19, 2019, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging she became disabled on August 3, 2017, based upon a combination of physical and mental impairments. After her claim was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

1

upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). At a hearing held on December 8, 2020, Plaintiff appeared with counsel and gave testimony before ALJ Donald D. D'Amato; a vocational expert ("VE") also testified. On December 21, 2020, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. (Tr. 17-30). The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff was 43 years old on her original alleged disability onset date. She graduated high school and has past relevant work as a real estate sales agent, administrative clerk and voluntary supervisor. (Tr. 28).

The ALJ determined that Plaintiff has severe impairments of "cervical post laminectomy syndrome; degenerative disc diseases of the cervical spine with radiculopathy; chronic pain syndrome; migraine headaches; arthritis, tendinitis, and bursitis of the right shoulder; arthritis of the bilateral knees; disorder of the sacrum; enthesopathy in the hip region; and anxiety disorder." (Tr. 20). Although Plaintiff argued at the hearing that her impairments were of listing level severity, the ALJ found that none of the impairments, alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appx. 1, such that Plaintiff would be entitled to a presumption of disability. (*Id*.)

> She requires an unskilled entry level job involving simple routine tasks that can be learned on the job within in thirty days or less that is non-fast-rate production, defined as involving no conveyor belt or assembly line work and no hourly quotas. The claimant requires a "low stress" environment defined as one having only occasional changes in the work setting and no more than frequent computer use. Additionally, her job responsibilities may be done with the turning of the torso or head. She can lift and/or carry five pounds frequently and ten pounds occasionally (from very little up to one third of an eight- hour workday). The claimant can stand and/or walk (with normal breaks) for two hours in an eight-hour workday, but can do so for

> only twenty to thirty minutes at one time before needing to sit for two minutes before resuming standing and/or walking while remaining on task. She can sit (with normal breaks) for six hours in an eight-hour workday, but can do so for only thirty minutes at one time before needing to stand and/or walk for only two minutes before resuming sitting while remaining on task. The claimant can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for two-thirds of an eight-hour workday. She can perform no more than occasional overhead reaching with the upper extremities. The claimant can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for two-thirds of an eight-hour workday. She needs to avoid hazards such as moving machinery and unprotected heights, but does not need to avoid hazards typically found in the workplace such as boxes on the floor or ajar doors. Job responsibilities do not include commercial driving. She requires work with no more than occasional exposure to blinking or flashing lights and no more than occasional exposure to loud noises (defined as SCO Code 4 level noise that is on par with large earthmovers or heavy traffic). The claimant's job responsibilities should not include the use of hand-held vibrating or power tools. She needs to be restricted to a work environment with good ventilation that allows her to avoid frequent concentrated exposure to extreme heat, extreme cold, and high humidity. Lastly, the claimant can perform occasionally: climbing stairs with handrails, balancing, stooping, crouching, and kneeling, but she needs to avoid crawling and climbing ladders, scaffolds, and ropes.

(Tr. 27).

Based upon her RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could not perform her prior work as a real estate agent, administrative clerk, and voluntary supervisor. (Tr. 28). However, the ALJ found that Plaintiff was able to perform other jobs in the national economy, including document preparer, addressing clerk, and call-out operator. Therefore, the ALJ determined that Plaintiff was not under a disability. (Tr. 30). Plaintiff urges this Court to reverse, arguing that ALJ erred by: (1) failing to properly evaluate evidence provided by the Plaintiff's treating medical source, and; (2) failing to meet the step five burden to prove Plaintiff can perform work that exists in significant number in the national economy. The Court finds no reversible error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits

4

analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

  **B. The ALJ's Decision is Supported by Substantial Evidence**

  1. *Weight Assigned to Dr. Hanshaw*

Plaintiff argues first that the ALJ failed to properly evaluate the opinion evidence provided by Plaintiff's treating medical source, Dr. Aaron Hanshaw. Notably, Dr. Aaron Hanshaw, D.O., provided a medical source statement dated July 20, 2020. (Tr. 455). In his statement, he noted Plaintiff's diagnoses of degenerative joint disease of the spine, migraine, and chronic fatigue. (Tr. 454). He opined that Plaintiff can work a total of two hours a day, stand for 15 minutes at a time, for a total of 60 minutes a day, and sit for fifteen minutes at a time for a total of 60 minutes a day. (Tr. 454). Dr. Hanshaw opined

5

that Plaintiff could not lift any amount on a frequent basis but could lift five pounds occasionally. (Tr. 454-455). He opined that she could never stoop, balance, or work around dangerous machinery but could occasionally bend, perform fine or gross manipulation with right and left hands, raise arms over shoulder, operate a motor vehicle and tolerate heat, cold, dust smoke, fumes and noise. (Tr. 455). He opined that she would likely miss more than seven days of work a month due to her impairment or treatment for the impairment. (Tr. 455). Dr. Hanshaw noted that "patient has proved that she wouldn't be able to keep gainfully employed." (Tr. 455).

In formulating Plaintiff's RFC, the ALJ determined that Dr. Hanshaw's opinion was only "minimally persuasive" and indicated that Dr. Hanshaw appeared to have "relied heavily on the claimant's subjective complaints." (Tr. 24). He further stated that his opinion was inconsistent with other evidence of record as well as examinations performed by Dr. Hanshaw. (Tr. 24-25). Plaintiff argues that ALJ's determination in this regard fails to comport with agency regulations and controlling law.

Effective for claims filed on or after March 27, 2017, such as Plaintiff's claim, the agency has comprehensively revised its regulations that govern medical opinions. Pursuant to the updated regulations, the ALJ now considers the persuasiveness of a medical opinion rather than assigning weight to the opinion. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (Mar. 27, 2017)). The most important factors in evaluating an opinion's persuasive value are (1) supportability, and (2) consistency. 20 C.F.R. § 404.1520c(b)(2). The agency no longer has a "treating physician rule" deferring to treating source opinions. 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the new

6

regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Additionally, the ALJ will consider the following factors when considering medical opinions: relationship with the claimant; specialization; and other factors, including understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c)(1)-(5). The new regulations also alter how the ALJ articulates his consideration of medical opinions. While the ALJ must articulate consideration of all medical opinions, the new regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. Compare 20 C.F.R. § 404.1527(c)(2) with 20 C.F.R. § 404.1520c(a), (b). The ALJ is only required to explain how he considered the supportability and consistency factors, 20 C.F.R. § 404.1520c(c)(1)-(2), which are the two most important factors in determining the persuasiveness of a medical source's opinion or a prior administrative finding. 20 C.F.R. 404.1520c(b)(2)

Here, the ALJ properly evaluated Dr. Hanshaw's opinions. As outlined by the Commissioner, Plaintiff's examinations consistently found normal strength, normal gait and station, and normal coordination and she demonstrated normal bilateral manipulative and grip ability. (Tr. 27, citing Tr. 322, 341, 346-47, 351, 356, 361, 366, 371, 375, 379, 383, 387, 390, 395, 397-400, 402, 404-05, 418, 420-23, 434-438, 450). Her cervical spine was stable. (Tr. 341, 346, 351, 356, 361, 366, 371, 375, 379, 383, 386, 390). She was observed to be comfortable in both the sitting and supine positions. (Tr. 440). Dr. Hanshaw's examinations noted Plaintiff was healthy appearing, in no distress, with normal strength and tone, and a normal gait. (Tr. 395, 397-400, 402, 404-05, 418, 420-

7

23, 450). Plaintiff's pain improved up to 90% with medication. (Tr. 377). Records noted Plaintiff denied medication side effects, reported better pain control with medical marijuana, and decreased her pain medication. (Tr. 339, 349, 359, 364). Plaintiff was not taking any prescription pain medication at the time of the hearing, but instead relied on CBD cream/oil and over the counter medication for migraines. (Tr. 41, 359). Plaintiff told her providers she felt better, had increased mobility and decreased pain, her migraines improved, and she was doing well. (Tr. 27 citing Tr. 320, 322, 349, 369). Plaintiff stated at her November 2018 medication refill appointment that she "'fe[lt] so much better'" and in February 2019 she stated "'I am doing really good,'" and she indicated she was "very pleased with how much better she [was] feeling and functioning. (Tr. 349, 359). Plaintiff's daily activities included chores, walking outside, yoga, bingo, caring for chickens, reading, knitting, crocheting, and cooking. (Tr. 324, 428-29). She also reported that she exercised daily. (Tr. 341, 349).

Furthermore, as noted by the Commissioner, an ALJ is "not required to incorporate the entirety of [an] opinion" into a residual functional capacity. *Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015); see also *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). Indeed, the determination of the residual functional capacity is an issue reserved to the ALJ. 20 C.F.R. § 404.1546. Although Plaintiff argues the ALJ erred by not adopting the opinion of Dr. Hanshaw, the assessment of a claimant's RFC is "based on all the relevant evidence in [the claimant's] case record," and not simply on a doctor's opinion. 20 C.F.R. § 404.1545(a)(1). The ALJ considered the entire record, including Plaintiff's normal objective findings, conservative

8

treatment, daily activities, and reports of improvement, to formulate the RFC finding. (Tr. 24-28). Accordingly, the ALJ's decision is substantially supported in this regard.

*2. Step five analysis*

Plaintiff argues next that the ALJ's step five determination is not supported by substantial evidence. In this regard, the ALJ concluded that Plaintiff could perform work as a document preparer and an address clerk. (Tr. 29). However, Plaintiff contends that neither of those jobs exists in significant numbers in the national economy.

At step five of the sequential evaluation process, the ALJ need only establish that a claimant can perform "other work." 20 C.F.R. § 404.1520(g). This burden is met if the ALJ establishes that there is at least one job existing in substantial numbers in the national economy that the claimant can perform. 20 C.F.R. § 404.1566(b). To determine which jobs, if any, Plaintiff could perform despite her impairments, the ALJ enlisted the help of a Vocational Expert. (Tr. 48-53). Specifically, the ALJ asked the VE whether there were any jobs that an individual with Plaintiff's vocational factors and credibly established functional limitations could perform. (Tr. 49-51). The VE responded by naming three representative jobs that such an individual could perform: including document preparer, address clerk or call-out operator.

Plaintiff contends that she cannot work as a document preparer, address clerk, or call-out operator because these jobs do not exist in the national economy and the Dictionary of Occupational Titles (DOT) definitions of those job are outdated and that the Department of Labor replaced the DOT with the Occupational Information Network (O*NET). Plaintiff cites to *Cunningham v. Astrue*, 360 F. App'x 606 (6th Cir. 2010) in support of the proposition that "[n]umerous courts (including recently in this Circuit) have ruled, when presented with the issue presented here, that an ALJ's failure to adequately

9

address, or address at all, objections/challenges to vocational testimony (variously, failure to address challenges based on up-to-date and reliable job information, objections to non-administratively noticed sources for job incidence data, and others) is error requiring remand because it undermines the ALJ's step five finding that there is other work the claimant can do, and effectively precludes meaningful judicial review.

Notably, this Court has found that *Cunningham* "did not hold," categorically, "that the DOT is an unreliable or out-of-date source." *Earls v. Comm'r of Soc. Sec.*, No. 09 CV 1465, 2011 WL 3652435, at *7 (S.D. Ohio Aug. 19, 2011). "Rather, the court [of appeals] acknowledged that pursuant to the regulations the DOT is a publication of which the ALJ may take notice." Id. Indeed, post-Cunningham, the Sixth Circuit directly held (as stated and described above), in a published decision: "To establish that work exists in the national economy, the ALJ can rely on evidence such as the testimony of a VE and the DOT." *Kyle*, 609 F.3d at 855 (labeling the DOT an enduring source of "reliable job information").[3]

As such, this Court has further found that despite "the Department of Labor's adoption of O*NET, the Social Security Administration still relies on the DOT and only requires the vocational expert's testimony to be consistent with the DOT. See SSR 00-4p ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy."); ("Occupational evidence provided by a VE or VS generally should

---

[3] See also, e.g., *Roberts v. Colvin*, 946 F. Supp. 2d 646, 662 n.6 (S.D. Tex. 2013) (same, rejecting argument that the DOT is "'obsolete' and not reliable"); *Biestek*, 880 F.3d at 787 (relying on the DOT as an information source); id. at 789-90 (affirming when the VE "based her testimony on the" DOT). This is consistent with the Circuit's pre-Cunningham case law. See, e.g., *Lindsley*, 560 F.3d at 603. Accordingly, to the extent Cunningham could be read to imply blanket disapproval of the DOT, *Lindsley's* unanimous, prior, published guidance, as well as *Kyle's* unanimous, subsequent, published direction, clearly trump.

be consistent with the occupational information supplied by the DOT.").” *Daniel v. Colvin*, No. 1:14-CV-775, 2015 WL 5530210, at *5 n.4 (S.D. Ohio Sept. 21, 2015); see also, e.g., *Purdy v. Berryhill*, 887 F.3d 7, 14 n.10 (1st Cir. 2018) (Souter, J.) (noting that, despite some criticisms of DOT obsolescence, the SSA "continues to treat the DOT as" reliable).

Moreover, the Sixth Circuit noted, in *O'Neal v. Commissioner of Social Security*, that the Social Security Administration "determined that O*NET in its current form was not suitable for disability claims adjudication." 799 F. App'x 313, 317 (6th Cir. 2020) (citing *Occupational Infor. Dev. Advisory Panel, Findings Report: A Review of the National Academy of Sciences Report, Report to the Comm'r of Soc. Sec.* 1, 8 (June 28, 2010), https://www.ssa.gov/oidap/Documents/COMPLETE%20FINALfindings%20Report%20OIDAP%20062810.pdf).

Here, the vocational expert testified, in response to the ALJ's questioning pursuant to SSR 00-4p, that her testimony was consistent with the DOT and its companion publications, though her testimony regarding absenteeism, being off-task, differentiation of climbing stairs and ladders, temperature extremes, ventilation, vibrations, workplace hazards, operating a motor vehicle, flashing lights, occasional computer use, sitting/standing, production rate, and differentiation of reaching overhead was based on her education and experience. (Tr. 52-3). Despite being given the opportunity at the hearing, Plaintiff's attorney did not question the VE regarding whether the DOT definitions of the identified jobs were obsolete or about the O*NET. (Tr. 53).

As noted by the Commissioner, a finding that a claimant can perform even one occupation that exists in significant numbers in the national economy is sufficient to find that the ALJ's decision at step five is supported by substantial evidence. 20 C.F.R. § 404.1566(b). Because the VE identified three jobs that an individual with Plaintiff's

vocational factors and RFC could perform, the ALJ properly relied upon the VE's testimony in determining that a significant number of jobs exist in the national economy that Plaintiff can perform. Accordingly, the ALJ's decision is substantially supported in this regard and should not be disturbed.

### III. Conclusion and Order

For the reasons stated, the ALJ's assessment of the evidence and formulation of Plaintiff's RFC in this case are substantially supported. A vocational expert's testimony will provide substantial evidence to affirm a nondisability finding so long as all relevant limitations are included in the description of the RFC conveyed in the hypothetical question posed to the VE. *Howard v. Com'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir.2002). The ALJ included all relevant limitations here and found Plaintiff capable of performing jobs that exist in significant numbers in the national economy.

Accordingly, **IT IS ORDERED THAT** the decision of the Commissioner to deny Plaintiff DIB benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge